1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10   LARRY DEAN WEATHERMAN,

11              Petitioner,

12        v.

13   RON HAYNES,

14              Respondent.

CASE NO. 3:20-CV-6087-JLR-DWC

REPORT AND RECOMMENDATION

Noting Date: May 21 2021

15

16        The District Court has referred this action to United States Magistrate Judge David W.

17   Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254,

18   seeking relief from a state court conviction. The Court concludes the Petition is time-barred and

19   Petitioner is not entitled to equitable tolling. Accordingly, the Court recommends the Petition be

20   dismissed with prejudice.

21
22
23
24

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Petitioner is currently serving an exceptional 300-month state court sentence of total confinement imposed by the Clark County Superior Court after a jury found him guilty of six counts of incest in the first degree with aggravating factors. Dkt. 10, Exhibit 1, Judgment and Sentence, *State v. Weatherman*, Clark County Superior Court Cause No. 13-1-00014-8.

On May 29, 2014, the trial court entered Petitioner's Judgment and Sentence. Dkt. 10, Exhibit 1 at 1. Petitioner, through counsel, filed a direct appeal and a *pro se* statement of additional grounds. Dkt. 10, Exhibit 4 at 1, Brief of Appellant, *State v. Weatherman*, Washington Court of Appeals Cause No. 46328-8-II; Exhibit 5, Brief of Respondent, *State v. Weatherman*, Washington Court of Appeals Cause No. 46328-8-II; Exhibit 6, Statement of Additional Grounds, *State v. Weatherman*, Washington Court of Appeals Cause No. 46328-8-II. The Washington Court of Appeals affirmed the trial court's Judgment and Sentence. Dkt. 10, Exhibit 3.

Petitioner then filed a *pro se* Petition for Review in the Washington Supreme Court. Dkt. 10, Exhibit 7, Petition for Review, *State v. Weatherman*, Washington Supreme Court Cause No. 92530-5. On March 30, 2016, the Washington Supreme Court denied this petition in a summary order. Dkt. 10, Exhibit 8, Order, *State v. Weatherman*, Washington Supreme Court Cause No. 92530-5. On April 6, 2016, the Washington Court of Appeals issued the mandate. Dkt. 10, Exhibit 9, Mandate.

On October 27, 2016, Petitioner filed a Personal Restraint Petition ("PRP"). Dkt. 10, Exhibit 10, PRP, *In re Pers. Restraint of Weatherman*, Washington Court of Appeals Cause No. 49615-1-II; Exhibit 11, Response to PRP, *In re Pers. Restraint of Weatherman*, Washington Court of Appeals Cause No. 49615-1-II; Exhibit 12, Rebuttal to Respondent's Response, *In re*

1   *Pers. Restraint of Weatherman*, Washington Court of Appeals Cause No. 49615-1-II. The

2   Washington Court of Appeals dismissed the PRP as frivolous. Dkt. 10, Exhibit 13, Order

3   Dismissing PRP, *In re Pers. Restraint of Weatherman*, Washington Court of Appeals Cause No.

4   49615-1-II. The Commissioner of the Washington Supreme Court denied Petitioner's Motion for

5   Discretionary Review. Dkt. 10, Exhibit 14, Motion for Discretionary Review, *In re Pers.*

6   *Restraint of Weatherman*, Washington Supreme Court Cause No. 94739-2; Exhibit 15, Ruling

7   Denying Review, *In re Pers. Restraint of Weatherman*, Washington Supreme Court Cause No.

8   94739-2. Petitioner's Motion to Modify the Commissioner's ruling was summarily denied by the

9   Washington Supreme Court. Dkt. 10, Exhibit 16, Motion to Modify, *In re Pers. Restraint of*

10  *Weatherman*, Washington Supreme Court Cause No. 94739-2; Exhibit 17, Order, *In re Pers.*

11  *Restraint of Weatherman*, Washington Supreme Court Cause No. 94739-2. On January 9, 2018,

12  the  Washington Court of Appeals issued the Certificate of Finality. Dkt. 10, Exhibit 18,

13  Certificate of Finality, *In re Pers. Restraint of Weatherman*, Washington Court of Appeals Cause

14  No. 49615-1-II.

15        On October 27, 2020, Petitioner signed, effectively filing,[1] his federal habeas Petition.

16  Dkt. 7 at 15. Respondent maintains the Petition was signed after the statute of limitations

17  expired, and therefore the Petition is untimely and should be dismissed with prejudice. Dkt. 9. In

18  the Response, Petitioner argues he is actually innocent based on testimony from a witness,

19  Melissa Porter (formerly Melissa Wagenknecht). Dkt. 11 at 6. In the Reply, Respondent

20  addresses Petitioner's actual innocence argument and submits for the first time, trial transcripts

21

22  ─────────────────

23        [1] Under the prison "mailbox rule," a petition is deemed filed for purposes of AEPDA's statute of
    limitations the moment it is delivered to prison authorities for forwarding to the clerk of the district court. *See*
    *Patterson v. Stewart*, 251 F.3d 1243, 1245 n. 2 (9th Cir. 2001).

24

1    showing Ms. Porter testified at trial, but arguing the evidence does not show Petitioner is actually

2    innocent. Dkt. 12. As Respondent addressed Petitioner's actual innocence argument for the first

3    time in the Reply and submitted additional trial transcripts, the Court found it appropriate to

4    allow Petitioner to file a supplemental response and Respondent to file a supplemental reply.

5    Dkt. 13. On March 19, 2021, Petitioner filed his Supplemental Response. Dkt. 14. On April 1,

6    2021, Respondent filed his Supplemental Reply. Dkt. 15.

7                                    FACTUAL BACKGROUND

8            The Washington Court of Appeals summarized the relevant facts of Petitioner's case as

9    follows:

10           The State charged Weatherman with six counts of first degree incest for
     incidents that occurred between July 27, 2002, and September 4, 2005. Each count
11   contained a domestic violence designation and notified Weatherman that the State
     would be seeking an exceptional sentence based on two aggravating circumstances:
12   (1) the defendant used his or her position of trust, confidence, or fiduciary
     responsibility to facilitate the commission of the current offense, RCW
13   9.94A.535(3)(n); and (2) the crime was a domestic violence offense and was part
     of an ongoing pattern of psychological, physical, or sexual abuse of a victim or
14   multiple victims manifested by multiple incidents over a prolonged period of time.
     RCW 9.94A.535(3)(h)(i).
15
             Before trial, the parties presented motions in limine. The State moved to
16   exclude evidence of prior allegations of sexual abuse by others against N.W.
     Weatherman opposed the motion arguing that he planned to introduce evidence
17   going to N.W.'s credibility based on her failure to disclose any sexual abuse by
     Weatherman despite the opportunity to do so during an investigation into sexual
18   abuse by N.W.'s stepbrother. Weatherman's offer of proof was that in the course
     of his investigation, Officer Prather would have asked if anyone else was sexually
19   abusing her, and that his report showed no notes of other abuse at that time. The
     trial court granted the State's motion, ruling that the proffered evidence was barred
20   by the rape shield statute and was irrelevant. However, the trial court explicitly left
     open the possibility for Weatherman to argue at trial that N.W. had the opportunity
21   to disclose and did not.

22           During jury deliberations, the jury sent the court five questions, the first of
     which is germane to this case. The jury asked, "If we find one count unanimous do
23   all additional counts have to be unanimous?" Clerk's Papers (CP) at 132. In
     discussing this question with the parties the court commented as follows:

24

1

2

3

4

> [JUDGE]: . . . The first question is, if we find five count—if we find one count unanimous, do all additional counts have to be unanimous? And the answer to that is yes. And, it's whether you want me to tell them yes or whether you want me to refer to the instructions they've been given.

VRP at 457. The parties agreed that their preference was for the judge to respond, "Refer to the instructions." VRP at 457.

5

6

7

8

> The jury returned guilty verdicts for each incest count, along with special verdicts that (1) defendant and N.W. were "members of the same family or household," (2) defendant committed the offenses using a "position of trust to facilitate the commission of the crime[s]," and (3) the crimes were "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim . . . manifested by multiple incidents over a prolonged period of time." CP at 135.

9

10

> Weatherman's counsel requested that the jury be polled to confirm the jurors understood that they needed to be unanimous for six separate and distinct incidents. The court conducted polling and counsel was satisfied.

11

12

13

> The court sentenced Weatherman to 100 months on each count within a standard range of 77 to 103 months on each count. But based on the aggravating factors, the trial court ordered three counts to run consecutively and three counts to run concurrently, for a total of 300 months.

14

Dkt. 10, Exhibit 3, at 3-4, Unpublished Opinion, *State v. Weatherman*, Washington Court of

15

Appeals Cause No. 46328-8-II.

16

17

18

19

20

21

22

23

24

1                                    DISCUSSION

2         Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became

3  effective on April 24, 1996, and is codified at 28 U.S.C. § 2241 *et seq.*, a one-year statute of

4  limitations applies to federal habeas petitions. Section 2244(d)(1)(A) requires a prisoner to file a

5  habeas petition within one year of "the date on which the [state court] judgment [of conviction]

6  became final by the conclusion of direct review or the expiration of the time for seeking such

7  review". A direct review generally concludes, and the judgment becomes final either upon the

8  expiration of the time for filing a petition for writ of certiorari with the United States Supreme

9  Court, or when the Supreme Court rules on a timely filed petition for certiorari. *Bowen v. Roe*,

10 188 F.3d 1157, 1158-59 (9th Cir. 1999). The Act further states "[t]he time during which a

11 properly filed application for state post-conviction or other collateral review . . . is pending shall

12 not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

13        Petitioner filed a direct appeal challenging his conviction and sentence. Dkt. 10, Exhibit 4,

14 5, 6, 8, 9. The Washington Supreme Court denied review on March 30, 2016. Dkt. 10, Exhibit 8.

15 The Washington Court of Appeals issued its mandate on April 6, 2016. Dkt. 10, Exhibit 9.

16 Petitioner did not file petition for writ of certiorari in the United States Supreme Court, making

17 his direct appeal final on June 28, 2016, the date the time for filing a petition for certiorari

18 expired. *See* U.S. Sup. Ct. Rule 13 (a writ of certiorari must be filed within 90 days after entry of

19 the judgment).The AEDPA limitations period began running the next day, June 29, 2016. *See*

20 *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).

21        The statute of limitations ran for 120 days. Then, on October 27, 2016, the date Petitioner

22 filed his PRP (state post-conviction petition), the statute of limitations was tolled pursuant to 28

23 U.S.C. § 2244(d)(2). *See* Dkt. 10, Exhibit 10, 18. The statute of limitations, therefore, stopped

24 running from October 27, 2016 to January 9, 2018—the date the Washington Court of Appeals

issued its certificate of finality on the PRP. *Id.; Certification from United States Court of Appeals, Ninth Circuit in Phonsavanh Phongmanivan v. Haynes*, 458 P.3d 767, 770 (Wash. 2020) (a PRP becomes final under Washington state law when the certificate of finality is issued).

The AEDPA limitations period ran for 120 days prior to Petitioner filing his PRP, and thus with tolling under 28 U.S.C. § 2244(d)(2), Petitioner had 245 days (for a total of 1 year) remaining to file his Petition after his PRP became final. In other words, Petitioner had until September 12, 2018 to file a timely federal habeas petition. Petitioner did not file his Petition until October 27, 2020, which was more than two years too late.

A. Equitable Tolling

Petitioner asserts he is entitled to equitable tolling because he relied on his sister-in-law, Tonya Stauffer, who is not an attorney, to assist him in preparing and filing his Petition. Dkt. 7 at 13-14; Dkt. 10, Exhibit 16 at 2. Petitioner further alleges he miscalculated the deadline to file his Petition. Dkt. 7 at 21 (Petitioner emailed Ms. Stauffer in August 2018 that he had only used eight months of his one year limitations period). Petitioner contends Ms. Stauffer acted (or promised to act) based on Petitioner's erroneous calculator of the limitations deadline. Dkt. 7 at 21. Petitioner alleges Ms. Stauffer never filed his Petition as promised. Dkt. 7 at 14, 27-28.

A petitioner seeking equitable tolling bears the burden of establishing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562 (2010) (internal citations omitted); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Equitable tolling is appropriate where external forces, rather than the petitioner's lack of diligence, account for the failure to file a timely petition. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Whether a petitioner is entitled to equitable tolling is a fact-specific inquiry. *Whalem/Hunt v.*

*Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). To receive equitable tolling, a petitioner at the very least must show the extraordinary circumstances "were the but-for and proximate cause of his untimeliness." *Ansaldo v. Knowles*, 143 Fed. Appx. 839, 840 (9th Cir. 2005).

Here, Petitioner has not demonstrated circumstances which are extraordinary or rendered it impossible for him to file a timely habeas petition. First, Petitioner's own miscalculation of the statutory tolling period or the time remaining to file his Petition is insufficient to demonstrate extraordinary circumstances. This includes a petitioner's "inability correctly to calculate the limitations period." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding "that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); *Waldron–Ramsey v. Pacholke,* 556 F.3d 1008, 1013 n. 4 (9th Cir. 2009) ("[W]e have held that a *pro se* petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling"); *See also Holland v. Florida*, 560 U.S. 631, 651-52 (2010) (internal citations omitted) (attorney negligence such as missing a filing deadline does not warrant equitable tolling).

Petitioner further argues his untimely Petition should be excused because of "[l]oss of legal help, Tonya Stauffer" and because of "[l]oss of legal documents." Dkt. 7 at 14.  However, any actions or failure to act by Ms. Stauffer also do not constitute a basis for equitable tolling. While attorney abandonment constitutes an extraordinary circumstance, alleged misconduct by attorneys or other non-attorneys (such as other inmates) has not been found to warrant equitable tolling. *Compare Maples v. Thomas,* 132 S. Ct. 912, 923 (2012) (An attorney's "virtual abandonment" of a client may constitute an extraordinary circumstance because "under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him."); *see also Spitsyn v. Moore,* 345 F.3d 796, 800 (9th Cir. 2003) *with Holland,*

1    560 U.S. at 651-52 (internal citation omitted); *Irwin v. Dept. of Veteran Affairs,* 498 U.S. 89, 96

2    (1990) (attorney negligence such as missing a filing deadline does not warrant equitable tolling.)

3         Several appellate and district courts have rejected claims of equitable tolling based on

4    difficulties with writ writers. In *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000), the

5    Tenth Circuit Court of Appeals rejected the prisoner-petitioner's claim he was entitled to

6    equitable tolling for the period of time the writ writer was preparing the petition. The Court held

7    "the fact that an inmate law clerk was drafting the state petition does not relieve Mr. Marsh from

8    the personal responsibility of complying with the law." In *Tomita v. Runnels,* 185 Fed. Appx.

9    600 (9th Cir. 2006), the one-year statute of limitations for filing federal habeas petitions was not

10   equitably tolled by the seizure of the petitioner's state habeas petition from his inmate "writ-

11   writer's" cell, or by a 10-month lockdown during which the petitioner and his inmate "writ-

12   writer" had limited communication and were denied access to the law library, where the

13   petitioner had no right to counsel for habeas corpus proceedings, let alone an inmate "writ-

14   writer." *See also Uriarte v. Terhune,* 9 Fed. Appx. 753 (9th Cir. 2001) (the petitioner's transfer

15   from prison before his jailhouse lawyer could file his habeas petition did not warrant equitable

16   tolling of the one-year limitation period under 28 U.S.C. § 2244(d)(1)); *United States v. Cicero*,

17   214 F.3d 199, 204-05 (D.C. Cir. 2000) (the movant had relied on a writ writer whose placement

18   in segregation "separated [petitioner] and his papers for some time before the expiration of the

19   one year grace period until after the filing deadline had passed." The court found this assertion

20   an insufficient basis for equitable tolling, because movant "entrusted [the writ-writer] with his

21   legal documents at his peril."); *Nguyen v. Yates,* 2010 WL 2569246, at *10-11 (C.D. Cal. Apr.

22   29, 2010) ( "any contention that petitioner received inadequate assistance from other inmates in

23   connection with his habeas efforts could not suffice to show an extraordinary circumstance.").

24

1    In *Henderson v. Johnson,* 1 F.Supp.2d 650, 655 (N.D. Tex. 1998), the court observed:

2  "[i]nmates who assist other prisoners with legal matters are not subject to the ethical and

3  fiduciary obligations of lawyers. If their miscreant, inept or negligent conduct were deemed

4  sufficient of itself to toll the AEDPA limitations period, the time-bar would be rendered virtually

5  meaningless." *See also Peterson v. Hubbard*, 2017 WL 698280, at *17–18 (E.D. Cal. Feb. 21,

6  2017).

7    In view of the foregoing case law, Ms. Stauffer's actions, or inactions, do not rise to the

8  level of an "extraordinary circumstance" thereby warranting equitable tolling. For example, Ms.

9  Stauffer is not a licensed attorney who abandoned petitioner, failed to communicate with him, or

10  prevented him from filing his Petition. *See Holland*, 560 U.S. at 651-52.

11    Accordingly, Petitioner has not shown an extraordinary circumstance prevented him from

12  filing his Petition and he is not entitled to equitable tolling.

13    B.  Actual Innocence

14    In his Response, Petitioner argues actual innocence should excuse him from his untimely

15  Petition. Dkt. 11. Petitioner alleges he was not allowed to produce evidence and testimony

16  concerning Mike Baker and Weldon Paul Wagenknecht. Dkt. 11 at 6. Petitioner alleges Ms.

17  Porter was not allowed to explain her relationship and marriage with Mr. Wagenknecht and how

18  the victim, N.W., lied about Mr. Wagenknecht and Petitioner.[2] Dkt. 11 at 6. In his Supplemental

19

20    [2] To the extent Petitioner attempts to establish a claim of actual innocence in his Supplemental Response
21  based on his argument that the first incident of sexual abuse could not have happened because Petitioner was living
   at the Oxford House at the time, Petitioner did not raise these claims in his Petition (Dkt. 7) or Response (Dkt. 11).
22  *See* Dkt. 14 at 5-6. Parties "cannot raise a new issue for the first time in their reply briefs." *State of Nev. v. Watkins,*
   914 F.2d 1545, 1560 (9th Cir. 1990); *see also Cedano—V iera v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003)
23  ("[W]e decline to consider new issues raised for the first time in a reply brief.") (citing *Thompson v. Commissioner,*
   631 F.2d 642, 649 (9th Cir. 1980). Thus, the Court declines to consider the arguments presented in the Supplemental
   Response. And even if the Court were to consider this argument, this is not new evidence because Petitioner's living
24  circumstances at the Oxford House were discussed during trial. *See* Dkt. 12-1 at 52, 98, 133-34, 189-91, 193-94,
   257-59, 268-69, 455.

1   Response, Petitioner provides more detail, explaining there was no context of Ms. Porter's

2   testimony, just a general statement N.W. had lied. Dkt. 14 at 2. Petitioner argues the context of

3   Ms. Porter's statement was vital to the defense and supported the defense's theory. *Id.* Petitioner

4   points to a statement Ms. Porter provided in 2016, in support of his PRP. Dkt. 10, Exhibit 6

5   (Witness Statement of Ms. Porter). In the statement, Ms. Porter testified, in relevant part:

6   > I invited [N.W.] over for some cocktails and I asked [N.W.] if Mr. Wagenknecht had been the one who raped and molested her. She then looked away and said, that
7   > it was all a lie, that she was mad at her Mother and was trying to get out of trouble. Knowing at the time as well that she claimed her Father, Larry Weatherman, raped
8   > her. Knowing Larry, I decided to ask if she lied about him as well. When asked she looked down and said "yes," she had lied. I wanted to know more so I asked her
9   > why. [N.W.] went on about how much she hated the relationship her Dad has with his wife Syndee Weatherman; to the point of even saying she wished I was her
10  > Step-Mother. I didn't understand so I kept questioning her. I asked how did accusing her Father of rape would do anything to hurt their marriage. She told me
11  > that she was mad at her Father for not leaving Syndee and that this was her way of getting back at him.
12  > …
    > In the time that I have known [N.W.] she claimed that MANY men have raped her
13  > or taken advantage of her. Her Father, Larry Weatherman, her ex Step-Father, Weldon Wagenknecht, ex Step-Brother, Joey Coggin, her Boyfriend's Father, her
14  > ex Husband … just to point out a few.

15  Dkt. 10, Exhibit 6.

16      "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass

17  whether the impediment is a procedural bar ... [or] expiration of the statute of limitations."

18  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Lee v. Lampert,* 653 F.3d 929, 934–37

19  (9th Cir. 2011) (en banc). The Court must apply the standards for gateway actual innocence

20  claims set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *See McQuiggin*, 569 U.S. at 386. "[A]

21  petitioner does not meet the threshold requirement unless he persuades the district court that, in

22  light of the new evidence, no juror [or other trier of fact], acting reasonably, would have voted to

23  find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup,* 513 U.S. at 329).

24

1    "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v.*

2    *United States*, 523 U.S. 614, 623 (1998); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998);

3    *Muth v. Fondren*, 676 F.3d 815, 819, 822 (9th Cir.), *cert. denied*, 133 S.Ct. 292 (2012). In order

4    to make a credible claim of actual innocence, a petitioner must "support his allegations of

5    constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

6    trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

7    *Schlup*, 513 U.S. at 324. Because of "the rarity of such evidence, in virtually every case, the

8    allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982,

9    990 (9th Cir. 2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

10    At trial, the jury found Petitioner guilty of six counts of first-degree incest which he

11    committed between July 27, 2002, and September 4, 2005. Dkt. 10-1, at 2-3; *see* Dkt. 12-1, at

12    286.[3] The jury also specially found the victim, N.W., and Petitioner were part of the same family

13    or household; Petitioner used his position of trust to facilitate the crimes; and the crimes were

14    part of an ongoing pattern of abuse. Dkt. 12-1 at 287. At sentencing, the state court found "the

15    jury's findings are supported by substantial evidence in the record." *Id.* at 314. Due to the

16    "appalling" nature of N.W.'s ordeal at Petitioner's hands, the state court increased his sentence

17    per count from the prosecution's recommended 90 months to 100 months and imposed an

18    exceptional sentence. *Id.*

19    N.W. testified during trial about the multiple incidents of sexual abuse by Petitioner

20    including oral, vaginal, and anal sex, as well as various types of ejaculation. *See* Dkt. 12-1 at 26-

21

22    _____

23    [3] In his Reply and Supplemental Reply, Respondent submitted the trial transcripts. Dkt. 12-1, Dkt. 15-1.The
Supreme Court has explained that "the Government is not limited to the existing record to rebut any showing [of
actual innocence] that petitioner might make. Rather, on remand, the Government should be permitted to present any
admissible evidence of petitioner's guilt even if that evidence was not presented [at the earlier proceeding]." *See*

24    *Bousley v. United States*, 523 U.S. 614, 624 (1998); *see also* Habeas Rule 5(c).

27 (N.W. testified she and Petitioner had sex in his van), 456, 460-66 (N.W. testified Petitioner touched her in his van), 468-72 (N.W. testified Petitioner would come into her room and put his fingers in her vagina), 478-83 (N.W. testified she and Petitioner engaged in oral and vaginal sex), 485-89 (N.W. testified she and Petitioner engaged in anal sex), 496- 501 (N.W. testified to the date ranges, and her ages during the incidents of the sexual abuse). N.W. testified she functioned as Petitioner's wife for a period of time, making her feel responsible for Petitioner's success when it came to staying sober and alive. *Id.* at 480-82. N.W. also testified and identified Petitioner's unusually shaped penis. *Id.* at 28-31; *see id.* at 209-10. Portions of N.W.'s testimony and account of the incidents were corroborated by other witnesses. *See id.* at 166-67, 490 (incident after which she was comforted by half-brother Justin); 70-71, 502 (incident occurring while half-sister Naomi was at the family home); 54-58, 444, 511-13 (N.W.'s statement regarding sexual abuse by Petitioner in filings made as part of divorce proceeding between N.W.'s mother Tracey Shanks and Weldon Wagenknecht, in about 2009).

Defense counsel did not extensively cross-examine N.W. during trial. *See id.* at 34-41, 262. Petitioner testified and denied having any sexual interactions with N.W. *See id.* at 193-97. With regard to Petitioner's unusual penis shape, Petitioner testified he and his current wife, Syndee, made pornographic films where his penis was exposed. *Id.* at 197-99, 203-06. However, Petitioner did not claim N.W. had watched the films, but rather, testified he and Syndee destroyed the films to prevent the children from watching them. *Id.* Petitioner conceded the films did not include close-ups of his penis but were filmed on a tripod camera approximately five to six feet away from Petitioner and Syndee. *Id.* at 203-06.

Ms. Porter testified at trial to undermine N.W.'s credibility, as defense counsel indicated during the pretrial in limine motions hearing. *Id.* at 174, 389. Ms. Porter had known Petitioner

1   and N.W. since the mid-1990s through an ex-husband. *Id.* at 175; Dkt. 10-2, at 55. Ms. Porter

2   testified N.W. lived with Ms. Porter in early 2008, had told her that Petitioner had raped her.

3   Dkt. 12-1 at 176. But Ms. Porter also testified N.W. told her at a later conversation that she had

4   lied to Ms. Porter about her allegations against Petitioner because she hated Petitioner's wife,

5   Syndee. *Id.* at 177-78. On cross-examination, Ms. Porter conceded she had not shared this

6   information with a sheriff who, in 2011, was investigating similar accusations made by N.W.

7   against Mr. Wagenknecht, the former husband of Ms. Porter and Ms. Shanks (N.W.'s mother).

8   *Id.* at 178-79, 182, 447, 512-13. N.W. denied she admitted lying to Ms. Porter about Petitioner.

9   *Id.* at 40-41.

10         Considering the evidence in the context it was presented at trial, the only new evidence

11  Petitioner submits is: (1) Ms. Porter's 2016 affidavit and testimony that N.W. admitted she lied

12  about being raped by Mr. Wagenknecht and (2) Ms. Porter's 2016 affidavit and testimony that

13  N.W. has claimed "that MANY men have raped [N.W.] or taken advantage of her," including

14  Petitioner and Mr. Wagenknecht. Dkt. 11, 14, 10, Exhibit 6.

15         While Petitioner also references Ms. Porter's statement N.W. lied about him, *see* Dkt. 11,

16  14 at 2, this portion of Ms. Porter's 2016 affidavit is duplicative of what was already presented at

17  trial and does not constitute new evidence. *See* Dkt. 10, Exhibit 6; Dkt. 12-1 at 40-41, 177-78.

18  *Schlup*, 513 U.S. at 324 (Petitioner must present new reliable evidence–such as exculpatory

19  scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—"that was not

20  presented at trial."); *See Washington v. Sherman*, 2014 WL 4795602, at *5 (N.D. Cal. Sept. 25,

21  2014) (The petitioner submitted a declaration which repeated his trial testimony. The court found

22  because the jury had previously heard and rejected the testimony by its verdict, petitioner's

23  declaration did not "new reliable evidence,") (citing *Schlup,* 513 U.S. at 324); *Oloba-Aisony v.*

24

1   *Scribner*, 2008 WL 1777220, at *13 (C.D. Cal. Apr. 3, 2008) (statements in a newly presented

2   incident report were cumulative of the trial testimony and did not constitute "new evidence"

3   supporting a claim of actual innocence); *Houston v. Castro,* 2003 WL 21056800, at *3 (N.D.

4   Cal. May 8, 2003) (rejecting actual innocence exception to statute of limitations, where petitioner

5   presented no new evidence of actual innocence, but only "the same evidence that the trial court

6   considered"); *see also Bannister v. Delo,* 100 F.3d 610, 618 (8th Cir. 1996), *cert. denied,* 521

7   U.S. 1126, (1997) ("putting a different spin on evidence that was presented to a jury does not

8   satisfy the requirements set forth in *Schlup";* citations, internal quotations and brackets omitted);

9   *Gomez v. Jaimet,* 350 F.3d 673, 680 (7th Cir. 2003) (same, citing *Bannister v. Delo* ).[4]

10        With respect to the two other statements by Ms. Porter, the Court concludes that petitioner

11  has not met his burden under *Schlup. See* 513 U.S. at 324. First, Ms. Porter's statements do not

12  necessarily provide a reliable or trustworthy account of Petitioner's innocence. Ms. Porter was

13  not a witness to the events and cannot establish that Petitioner did not commit six counts of

14  incest. *See House,* 547 U.S. at 552 (testimony from witness with no evident motive to lie has

15  more probative value than testimony from inmates, suspects, or friends or relations of the

16  accused). Moreover, Ms. Porter was a friend of Petitioner's and as a result, her testimony has

17  reduced weight and reliability. *Jones v. Taylor*, 763 F.3d 1242, 1249 (9th Cir. 2014); *McCray v.*

18  *Vasbinder,* 499 F.3d 568, 573 (6th Cir. 2007) (noting that family members might have a personal

19  stake in a defendant's exoneration).

20

21  ───────────────────

22      [4] Even if Ms. Porter's statement that NW lied about Petitioner raping her met the definition of new
    evidence, there is no reason to believe any juror would have voted to find Petitioner not guilty. Rather, this evidence
23  is merely cumulative when considering the evidence that was already presented at trial. *See Larsen v. Soto*, 742 F.3d
    1083, 1096 (9th Cir. 2013) ("[W]e have denied access to the *Schlup* gateway where a petitioner's evidence of
    innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of
24  guilt.").

1    Second, even if the statements were reliable, they would still have to be weighed by the

2  jury. A federal habeas court must consider all of the evidence, making "a probabilistic

3  determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at

4  537–38 (quoting *Schlup*, 513 U.S. at 329). Here, N.W. testified in open court Petitioner had

5  molested and sexually abused her, she identified Petitioner's unusually shaped penis, and other

6  family members corroborated the incidents. In light of this evidence, the Court cannot say that

7  Ms. Porter's 2016 testimony is sufficient to establish Petitioner's innocence. The Court cannot

8  say every juror would credit Ms. Porter's 2016 affidavit over Ms. Porter's trial testimony, along

9  with the other evidence presented at trial. Thus, the Court is not convinced that in light of the

10  other evidence of guilty, that it is more likely than not that no reasonable juror would have

11  convicted Petitioner. *See Sistrunk v. Armenakis,* 292 F.3d 669, 677 (9th Cir. 2002) (en banc)

12  (affirming District Court's conclusion that the petitioner's *Schlup* claim relied on an attempt to

13  discredit prosecution witnesses rather than affirmatively presented new exculpatory evidence that

14  the petitioner had not committed the crime), *cert. denied,* 537 U.S. 1115 (2003).

15    To the extent Petitioner argues the new evidence impeaches N.W.'s testimony,

16  impeachment evidence can demonstrate actual innocence, where it gives rise to "sufficient doubt

17  about the validity of [the] conviction." *Carriger v. Steward,* 132 F.3d 463, 478 (9th Cir. 1997);

18  *see also Schlup,* 513 U.S. at 330 ("[U]nder the gateway standard ..., the newly presented

19  evidence may indeed call into question the credibility of the witnesses presented at trial."). In

20  *Carriger,* the Ninth Circuit found the petitioner had met the *Schlup* standard where the petitioner

21  had presented a sworn statement from a third party confessing to the crime for which the

22  petitioner was convicted. *Carriger,* 132 F.3d at 478. There was also evidence demonstrating that

23  the third party had bragged about committing the crime; described how he disposed of the

24

1  evidence and maintained the lie that the petitioner had committed the crime; described the nature

2  of the crime; and had a history of violence and deceit. *Id.* at 478-79.

3       This case, however, is distinguishable. Petitioner contends he has met the actual

4  innocence standard by offering new evidence N.W. told Ms. Porter she lied about Mr.

5  Wagenknecht raping her and Ms. Porter testified N.W. had claimed many men had raped her.

6  Dkt. 10, Exhibit 6, 11, 14. However, such evidence is not as compelling as a third-party

7  confession which undermined the validity of the prosecution's entire case. As discussed above,

8  the evidence presented by Petitioner does not demonstrate that he is actually innocent and not

9  guilty of six counts of incest. A reasonable juror would not be required to rely exclusively on

10  N.W.'s statements to Ms. Porter in determining Petitioner's guilt. Thus, even if Ms. Porter's

11  testimony affected N.W.'s credibility, Petitioner has not shown how such evidence demonstrates

12  no reasonable juror would have convicted him.

13       In sum, Petitioner's conclusory allegations of alleged actual innocence and arguments of

14  legal insufficiency are insufficient to establish even a prima facie gateway actual innocence

15  claim under the exacting standard established by *Schlup*. *See* 513 U.S. at 316; *Shumway,* 223

16  F.3d at 990. Accordingly, Petitioner has failed to carry his burden of demonstrating that he is

17  entitled to equitable tolling based on actual innocence.

18       The Court therefore recommends dismissing the Petition with prejudice as time-barred.

19

20

21

22

23

24

1

<u>EVIDENTIARY HEARING</u>

2    The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

3    *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

4    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

5    the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

6    28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v.*

7    *Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle

8    Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes

9    the applicant's factual allegations or otherwise precludes habeas relief, a district court is not

10   required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not

11   necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved

12   on the existing state court record.

13

<u>CERTIFICATE OF APPEALABILITY</u>

14   A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

15   court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

16   (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

17   may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

18   constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

19   that jurists of reason could disagree with the district court's resolution of his constitutional

20   claims or that jurists could conclude the issues presented are adequate to deserve encouragement

21   to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*,

22   529 U.S. 473, 484 (2000)). Pursuant to this standard, this Court concludes Petitioner is not

23   entitled to a certificate of appealability with respect to this Petition.

24

1                                   CONCLUSION

2          Petitioner's Petition is untimely as it was filed more than one year after the state court

3    judgment became final. There are no extraordinary circumstances in this case requiring the

4    application of equitable tolling principles. Therefore, the Petition is barred by the one-year

5    statute of limitations period imposed under § 2244(d) and should be dismissed with prejudice.

6    No evidentiary hearing is required and a certificate of appealability should be denied.

7          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

9    6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

10   review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

11   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May

12   21, 2021 as noted in the caption.

13

14         Dated this 3rd day of May, 2021.

15

16

17                                             David W. Christel
                                               United States Magistrate Judge

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 19